IN THE OREGON TAX COURT
MAGISTRATE DIVISION
Property Tax

GREGG SNYDER,                          )
                                       )
                Plaintiff,             )       TC-MD 200146N
                                       )
        v.                             )
                                       )
MULTNOMAH COUNTY ASSESSOR,             )       **ORDER DENYING**
                                       )       **PLAINTIFF'S MOTION**
                Defendant.             )       **FOR SUMMARY JUDGMENT**

This matter came before the court on Plaintiff's Motion for Summary Judgment and

Ordering Plaintiff's Requested Relief (Motion), filed July 22, 2020. Defendant filed its

Response on September 15, 2020. Oral argument was held on October 28, 2020. This matter is

now ready for the court's determination.

A.      *Plaintiff's Complaint, Motion, and Supporting Documents*

Plaintiff appealed the assessment of property identified as Account R189122 (subject

property) for the 2019-20 tax year. (Compl at 1-2.) Plaintiff previously appealed to the

Multnomah County Board of Property Tax Appeals (BOPTA), which convened on February 11,

2020 and affirmed the roll values determined by the assessor, including: $306,500 (land real

market value), $406,980 (improvements real market value), $713,380 (total real market value),

and $102,870 (real market value of exception). (*See id*. at 2.)

Plaintiff moves for summary judgment, stating that "[t]he central issue in the case is

whether $102,870 in 2019 exception real market value * * * should be exempt from the roll."

(Ptf's Mot at 1.) Plaintiff argues that, because the exception value is attributable to the solar

energy project or to upgrades required as a condition of approval for the building permits on the

solar project, it should be exempt from taxation under OAR 150-307-0210. (*Id*.) Plaintiff states

that the exemption available under that regulation "is not limited in size, scope or amount." (*Id.*) Plaintiff argues that the "vast majority of the work", and presumably the cost, was attributable to the solar project. (*Id.* at 5.) Plaintiff asserts that the remaining value attributable to the ADU is under the threshold for exception value and should be considered minor construction. (*Id.*)

Plaintiff received initial approval for his solar project on January 20, 2016. (Ptf's Mot, Ex 2.) The permit was for "a 23-panel solar array on the south facing roof of [the] * * * rear detached garage." (*Id.*) This approval was subject to certain conditions: that the panels be mounted six inches above the roof plane and both the panels themselves and the supporting structural elements be black to "blend in with the existing roof." (*Id.*)

In July 2017, Plaintiff hired Sunlight Solar to install the solar panels. (Ptf's Mot at 3.) Sunlight Solar obtained two additional permits for the rooftop panels and electrical connections. (*Id.*) The first permit was issued September 20, 2017, and described the project as "Solar Roof Mounted Array Installation[.]" (Ptf's Mot, Ex 3.) The second permit was issued on January 23, 2018, and described the project as "Install subpanel and feeder and branch circuits for detached garage[.]" (Ptf's Mot, Ex 4.) Neither permit appears to contain any conditions.

Construction on the project began in Fall 2017, with city building officials making frequent visits and requiring additional work and corrections to the electrical system. (Ptf's Mot at 3.) Plaintiff wrote that, on February 26, 2018, a city official determined that the entire electrical pathway would have to be updated in order to comply with the relevant building codes and made the updates a condition of the permits. (*Id.*) The additional work included "all electrical wiring in the garage, in the common utility trench connecting the garage to the main house [], the main house primary electrical panel and the Pacific Power meter." (*Id.*) Further upgrades were required to the water and sewer lines for the building itself under the new permits.

(*Id*. at 4.) Plaintiff concedes that he also had a permit to convert the garage into an ADU. (*Id*. at 5.) Plaintiff asserts "that the ADU conversion would not be possible without the solar project placing the modernized utility connections and foundation" and that the value of the ADU portion of the project is $14,670 split over two years. (*Id*.)

In support of his motion, Plaintiff provided an incomplete copy of Defendant's appraisal summary prepared for BOPTA in support of the ADU valuation. (Ptf's Mot, Ex 1.) Plaintiff also provided what appears to be a receipt for permits and other land use related items, dated March 16, 2018. (Ptf's Mot, Ex 5.) The receipt lists fees for "land use plan review", "address assignment fee", "water meter upsizing", and other zoning and building permit related charges. (*Id*.)

B.      *Defendant's Response*

Defendant asserted that no value was added to the rolls for Plaintiff's solar installation. Defendant wrote that "the real issue is valuation associated with converting the detached garage into [an ADU]." (Def's Resp at 2.) Defendant disputes Plaintiff's real market value of $14,670 for the ADU and related factual assertions. (*Id*. at 1.) Defendant asserts that Plaintiff has failed to follow the correct methodology for calculating the exception under ORS 307.175(4), which requires subtracting the value of the subject property as if it were not equipped with the solar panels from the value of the subject property with the solar panels. (*Id*. at 1.) At oral argument, Defendant stated that the utility upgrades related to the ADU and main house are taxable.

C.      *Analysis*

The issue presented is whether the entire $102,870 in exception value added to the 2019-20 tax roll is exempt under ORS 307.175[1] or, alternatively, under ORS 308.149 as minor

---

[1] The court's references to the Oregon Revised Statutes (ORS) are to 2017.

ORDER DENYING PLAINTIFF'S MOTION                                                3
FOR SUMMARY JUDGMENT  TC-MD 200146N

construction. "[T]he court has jurisdiction to determine the * * * correct valuation on the basis of the evidence before the court, without regard to the values pleaded by the parties." ORS 305.412. Generally, the taxpayer bears the burden of proof and must prove their case by a preponderance of the evidence. ORS 305.427. "Preponderance of the evidence means the greater weight of evidence, the more convincing evidence." *Feves v. Dept. of Revenue*, 4 OTR 302, 312 (1971). "[I]f the evidence is inconclusive or unpersuasive, the taxpayer will have failed to meet his burden of proof * * *." *Reed v. Dept. of Rev.*, 310 Or 260, 265, 798 P2d 235 (1990).

The court will grant a motion for summary judgment if all the documents on file "show that there is no genuine issue as to any material fact and that the moving party is entitled to prevail as a matter of law." Tax Court Rule (TCR) 47.[2] "No genuine issue as to a material fact exists if, based upon the record before the court viewed in a manner most favorable to the adverse party, no objectively reasonable juror could return a verdict for the adverse party * * *." (*Id.*)

1.      *Maximum assessed value; exception value; real market value*

The Oregon Constitution limits annual increases in property tax attributable to increases in property's real market value. Or Const, Art XI, § 11; *see also* ORS 308.142 to 308.166. It does this by creating the concept of "maximum assessed value." Property tax is based on the lesser of a property's real market value or its maximum assessed value. Or Const, Art XI, §§ 11(1)(b), (f); *see also* ORS 308.146(2). Generally, a property's maximum assessed value increases no more than three percent each tax year. Or Const, Art XI, §§ 11(1)(a), (b); ORS 308.146(1). However, that three percent rule is subject to several exceptions, including for "new

---

[2] TCR 47 is made applicable by Tax Court Rule – Magistrate Division (TCR-MD) 13 which provides that "[t]he court may apply TCR 47 to motions for summary judgment, to the extent relevant."

property or new improvements to property." Or Const Art XI, § 11(1)(c)(A); *see also* ORS 308.146(3)(a). "'New property or new improvements' means changes in the value of property as the result of * * * [n]ew construction, reconstruction, major additions, remodeling, renovation or rehabilitation of property[.]" ORS 308.149(6)(a)(A). Value attributable to an exception is known as "exception value." New construction includes site developments such as utilities. *See* ORS 307.010(1)(a); OAR 150-308-0130(1)(a).

The value of new property is the amount by which the real market value of the new improvements exceeds the real market value of any retirements. ORS 308.153(2)(a). Real market value is defined as "the amount in cash that could reasonably be expected to be paid by an informed buyer to an informed seller each acting without compulsion in an arm's-length transaction occurring as of the assessment date for the tax year." ORS 305.205(1).[3] The value of the new improvements is then added to the property's maximum assessed value in proportion to the average maximum assessed value over average real market value, also known as the "changed property ratio" or CPR. *See* ORS 308.153(1)(b); *Magno v. Dept. of Rev.*, 19 OTR 51, 54 (2006) ("The CPR is the ratio of the average MAV for similar property in the area to the average RMV for similar property in the area.")

2.      *Exemption of alternative energy systems*

Solar energy systems or certain other renewable energy systems used for heating or cooling or to generate electrical energy ("alternative energy system" or AES) are exempt from "property taxation if the system is: (a) A net metering facility, as defined in ORS 757.300; or (b) Primarily designed to offset onsite electricity use." ORS 307.175(1), (2). Real property to which the AES is affixed is exempt only if it "is otherwise exempt from ad valorem property

---

[3] The assessment date for the 2019-20 tax year is January 1, 2019. ORS 308.210(1); ORS 308.007(1)(b).

taxation." ORS 307.175(3). "Property equipped with an [AES] is exempt from ad valorem property taxation in an amount that equals any positive amount obtained by subtracting the real market value of the property as if it were not equipped with an [AES] from the real market value of the property as equipped with the [AES]." ORS 307.175(4).

OAR 150-307-0210[4] provides guidance concerning the scope of the exemption specific to solar panel systems. Solar AES include "[s]olar electric or photovoltaic (PV) systems that consist of solar electric panels (photovoltaic cells) that convert sunlight directly into electricity and may include connective wiring, solar electric modules, inverter, mounting system, disconnection equipment, net-metering system, and storage batteries." OAR 150-307-0210(1)(a)(A)(i). "[AES] devices and components are exempt to the extent that they add real market value to the property. Additional value accruing to property to which a qualified [AES] is installed due to the existence of such a system is exempt." OAR 150-307-0210(4).

Here, it appears that the parties agree that the solar panels, mounts, supporting structural elements, and connective wiring are included under the ORS 307.175 exemption.[5] The parties dispute centers on: (1) whether and to what extent the upgraded utilities qualify for an exemption under ORS 307.175; 2) the proper method for calculating the exemption amount; and 3) the value attributable to the ADU and other improvements not related to the solar panel system.

/ / /

---

[4] The Oregon Department of Revenue is authorized to make "such rules and regulations it deems proper to regulate its own procedure and to effectually carry out the purposes for which it is constituted." ORS 305.100; ORS 306.115 (giving the Oregon Department of Revenue "general supervision and control" over Oregon's property taxation system.)

[5] Plaintiff contends that no exemption was granted for his solar energy system, but Defendant argues that value was never added for the solar energy system in the first place. Defendant further explains that when no value is added to the roll, a notation is not required, which may be the cause of Plaintiff's confusion. The court is not aware of any legal authority requiring Defendant to make a notation of value that was never added to the roll.

a. Whether utility upgrades are exempt under ORS 307.175

In general, all real and tangible property within this state is subject to assessment and taxation unless exempt. ORS 307.030. Real property to which an AES is affixed is not entitled to exemption because of the AES and must independently qualify for exemption. ORS 307.145(3). The scope of the exemption under ORS 307.175 includes connective wiring, mounting systems, and other "devices and components of the AES" but is silent on the issue of whether related utilities upgrades are included. Typically, underground utilities such as sewer and water are considered part of the land. ORS 307.010; OAR 150-307-0010(2). "Offsite developments" including "utility services such as electricity, water, gas, sewer and telephone lines" are considered "land improvements to the site."[6] OAR 150-307-0010(2)(a)(A)(i). However, electrical utilities are generally considered part of improvement value. OAR 150-307-0010(2) (improvements include "special wiring, electrical panels, and switches").

At this stage of the proceedings, no evidence has been provided regarding the nature and extent of the utility upgrades or their connection with the solar energy system. It is also unclear whether the upgrades related to the solar project or if some were related to the ADU. It seems likely that updates to the water and sewer systems may be related to the ADU and not the solar project. It also seems likely that at least some of the electrical work related to the ADU. These are issue of fact and are not properly resolved on a motion for summary judgment. *See e.g. Farmer's Direct Inc. v. Dept. of Rev.,* __ OTR __ (Feb 3, 2021) (slip op at 37) ("the classification of property * * * is intensely factual"). Notwithstanding Plaintiff's focus on individual items and costs, the method mandated by statute for calculating the exemption under

---

[6] Whether utilities are part of the land or the improvements has no bearing on maximum assessed value, which is calculated for the property tax account as a whole. *Flavorland Foods v. Washington County Assessor,* 334 Or 562, 54 P3d 582 (2002).

ORS 307.175(4) requires comparing properties with and without AES to arrive at the contributory value.

   b. Solar permit conditions

  Plaintiff argues that, because the utilities upgrades were made conditions of the permits for the solar project, those utility upgrades should be exempt. In general, building permit conditions must bear some relationship to the needs created by the development. *Dolan v. City of Tigard*, 512 US 374, 391-92, 114 S Ct 374, 129 LEd 2d 304 (1995) (adopting "rough proportionality" standard under the Fifth Amendment); *see also Lincoln City Chamber of Commerce v. City of Lincoln*, 164 Or App 272, 991 P2d 1080 (1999) ("to satisfy the Takings Clause of the Fifth Amendment dedication and similar developmental conditions must be at least 'roughly proportional' in 'nature and extent to the impact of the proposed development'"). Thus, it may be that some of the upgrades were so closely related to the AES as to be considered part of the system. Once again, this is a question of fact.

  Plaintiff's evidence consisted of the original approval which provided that the solar panels be mounted six inches above the roof plane and both the panels themselves and the supporting structural elements be black to "blend in with the existing roof." It appears undisputed that those items are properly exempt under ORS 307.175. Plaintiff claims that the utilities upgrades were also made conditions of the permits for the solar project but did not provide any evidence of that. The court has only Plaintiff's assertion. At this stage, the court is unable to determine whether the utilities upgrades were related to the ADU or to the solar panel project. Plaintiff may present evidence on this question at trial.

   c. Method for determining exemption under ORS 307.175

  Defendant challenges Plaintiff's value determination for the solar energy system. As

discussed above, in order to calculate the exemption amount under ORS 307.175(4), the court must determine the contributory value of the solar energy system to the subject property.

In *Krom v. Dept. of Rev.*, taxpayer appealed the assessed value of her personal residence and sought an exemption of $25,000 for her solar heating system under ORS 307.175 (1995).[7] 13 OTR 388, 388-390 (1995). The department agreed that the taxpayer was entitled to an exemption for her solar system but disagreed on the value. *Id.* at 390-391. Addressing the valuation dispute, the court stated "[a] solar system might cost $25,000 and add only $5,000 of value while another system might cost $5,000 and add $25,000 in value. There is no evidence in the record that the subject's solar system adds either $5,000 or $25,000 to the property's real market value." *Id.* at 391. Because of the lack of evidence on the contributory value of the solar system, the court held that "no value may be deducted from the [RMV] for the exemption." *Id.*

Here, the court has received no evidence from Plaintiff regarding the value attributable to the solar energy system. At the hearing Plaintiff asserted that the value of the solar project was about $100,000 and the value of the ADU was about $14,000. Taxpayers must provide competent evidence of the real market value of their property." *Poddar v. Dept. of Rev.*, 18 OTR 324, 332 (2005) (quoting *Woods v. Dept. of Rev.*, 16 OTR 56, 59 (2002) (citation omitted)). Competent evidence includes appraisal reports and sales adjusted for time, location, size, quality, and other distinguishing differences, and testimony from licensed professionals such as appraisers, real estate agents and licensed brokers. At this stage of the proceedings, Plaintiff has

---

[7] The court analyzed the 1995 version of the statute which provided, in relevant part,

"Property equipped with solar, geothermal, wind, water or methane gas energy systems for the purpose of heating, cooling or generating electrical energy shall be exempt from ad valorem taxation in an amount that equals any positive amount obtained by subtracting the real market value of the property as if it were not equipped with such systems, from the real market value of the property so equipped."

not presented competent evidence of the contributory value of the solar energy system, or that Defendant impermissibly added value attributable to the solar energy system. Accordingly, Plaintiff's motion must be denied.

      3.    *Minor construction*

"'New property or new improvements to property' does not include changes in the value of the property as the result of * * * [g]eneral ongoing maintenance and repair [GOMAR]; or * * * [m]inor construction." ORS 308.149(6)(b). "Minor construction" means "additions of real property improvements, the real market value of which does not exceed $10,000 in any assessment year or $25,000 for cumulative additions made over five assessment years." ORS 308.149(5). "General ongoing maintenance and repair" (GOMAR) means activity that "preserves existing improvements without significantly changing the design or materials", that does not "create new structures" or additions to existing property improvements or replace real or personal property, and that does not affect a significant portion of the improvements. OAR 150-308-0130(2). In either case, the real market value, rather than the cost,[8] is the relevant inquiry. OAR 150-308-0130(2)(b); ORS 308.149(5).

Plaintiff's bare assertion that the ADU added only $14,670 in value "split over a [two-]year construction timeframe" is facially unconvincing. (*See* Ptf's Mot at 5.) Defendant disputes that the work done regarding the ADU constituted minor construction. Plaintiff has submitted no evidence in support of its assertion except a partial appraisal summary prepared by Defendant for BOPTA. The court cannot determine the value of the ADU based on the evidence presented.

/ / /

---

[8] The cost approach is just one of the three approaches to value that must be considered when determining the value of property. OAR 150-308-0240(2)(a) (the approaches to value are (1) the cost approach; (2) the sales comparison approach; and (3) the income approach).

D.    *Conclusion*

Because there are genuine issues of material fact concerning the value of the ADU, the contributory value of the solar panel installation, and the value, nature and extent of the utility upgrades, Plaintiff's Motion for Summary Judgment must be denied.  Now, therefore,

IT IS ORDERED that Plaintiff's Motion for Summary Judgment is denied.

IT IS FURTHER ORDERED that Plaintiff must file a written status report, copy to Defendant, within 30 days from the date of this Order stating whether he wishes to continue this appeal to present evidence on the factual questions described in this Order.[9]

-----------------------------

***This interim order may not be appealed.  Any claim of error in regard to this order should be raised in an appeal of the Magistrate's final written decision when all issues have been resolved.  ORS 305.501.***

***This document was signed by Presiding Magistrate Allison R. Boomer and entered on March 24, 2021.***

-----

[9] If Plaintiff wishes to proceed with his appeal, he must allow a site inspection of the subject property, as previously requested by Defendant and ordered by the court.

ORDER DENYING PLAINTIFF'S MOTION                                                11
FOR SUMMARY JUDGMENT  TC-MD 200146N